## LAMAS ET AL. *v.* ROIG.

### APPEAL from the District Court of Humacao.

No. 313.—Decided June 24, 1909.

DISSOLUTION OF ATTACHMENT—SALE OF CANE PLANTATION—OPPOSITION TO THE SALE.—In the case at bar the appellants seek the dissolution of an attachment levied at the instance of the respondent on a cane plantation sold to the appellants by a third party who owed the respondent a certain sum of money. The defendant attacks said sale as fraudulent, and the court held that inasmuch as neither the simulation of the sale nor the fraud alleged to have been committed, had been proven, the attachment should be dissolved and the attached property or the value thereof returned to the appellants.

ID.—SALE ATTACKED AS FRAUDULENT—ACTS OF DOMINION EXERCISED BY THE
VENDOR.—Even in the supposition, not borne out by the evidence, that the
vendor had continued on the farm and exercised acts of dominion over the
cane, these facts in themselves would not be enough to destroy the presump-
tion of good faith which the law throws around every transaction.

ID.—INSOLVENCY OF VENDOR—INSUFFICIENT PROOF.—The fact that a debtor of
a certain sum has sold a crop of cane without paying the person who had lent
him the money to plant it is no proof of said debtor's insolvency.

ID.—EVIDENCE OF FRAUD.—The existence of fraud in a contract is not a matter
to be decided by mere suspicion or vague inference.

ID.—LIQUIDATION OF THE CONJUGAL PARTNERSHIP—CAPACITY OF THE CONTEST-
ANT.—A person who is not an heir of the spouses nor otherwise interested
in the liquidation of the conjugal partnership has no capacity to allege the
absence of said liquidation in an action such as the one at bar.

The facts are stated in the opinion.

*Mr. López Landrón* for appellants.

The respondent did not appear.

MR. JUSTICE WOLF delivered the opinion of the court.

This is an appeal from the District Court of Humacao.
The appellee attached some property belonging or alleged to
belong to the appellants, the reason for the attachment arising
out of a debt that the appellee urged was owing to him by
Juan García Caloca.

On or about the 15th of September the appellant Lamas
Lamela wrote to the appellee informing him that said appel-
lant had purchased from Juan García Caloca 100 acres of
growing sugar-cane which the last named had planted on land
belonging to the appellee. In answer to this letter the ap-
pellee wrote as follows:

"I am acquainted with the manner in which you have bought
from Mr. Juan García Caloca in the clandestine sale which he made
and of which I had knowledge when Mr. García Caloca was already
on the high seas, a thing which has surprised me very much, not be-
cause of the sale itself but because of my being his creditor and the
person who furnished the wherewithal for such canes and for all those
which have ever been sown by said García Caloca. He went away
without even acknowledging an account of $1,000 or more which he
owed me. I suppose that the expenses that hereafter the canes will
require will be incurred by you. He asked me to help him until the
canes were in good condition, but as he has sold them I will not ex-

pend a single cent more. It means that if Mr. García Caloca dies he will have left in the lurch a man to whom he owes all he has. That has been the reward I have always obtained from all those persons that I have protected. The remark that I have to make is that I am the person who advanced the money for the cultivation of said canes and I am the first entitled to collect and Mr. García Caloca should have left with you value sufficient to cover his account with me in case of his death; however, I will see how I shall fix this matter. In regard to selling, if you desire to buy the crop of me, provided you will consider this matter in a reasonable manner, we shall probably be able to arrange. If you come around here, please see me.''

The letter from Lamas to Roig was in answer to an inquiry made by the latter in reference to the conditions of the purchase. There is, therefore, no doubt that the appellee had full knowledge of the sale made by Juan García Caloca to Ventura Lamas. The attachment was made in order to secure the effectiveness of a judgment in a suit against García Caloca. By virtue of this attachment the marshal seized and put into the custody of Jesús Berrios the product of 114 sacks of sugar of the second class, averaging 250 pounds, besides four plantations of cane or seed cane planted, also 26 acres ready to be cut, and 23 acres more of seed cane and the marshal sold the cane under the orders of the district court.

The object of the suit in the present appeal was to set aside the attachment and for the recovery of the value of such part of the property as had been destroyed or made away with and for legal interest from the date of the filing of the complaint.

In response to the complaint the appellee set up that the contract of sale between García Caloca and Lamas was fraudulent or simulated and that on the same day, namely, September 19, 1906, the same parties executed another contract by which the effect of the first contract was destroyed, the second contract being a contract of partnership. The appellee further sets up in his answer that no consideration passed from the appellants to García Caloca. Appellee also

insists in his answer that García Caloca continued in possession of the 100 acres and exercised acts of dominion over the same after such sale was alleged to be made. Appellee alleges, besides, that the extent of the attachment was reduced to 25 acres, that being all that it was necessary to secure the debt, which he alleged amounted to $1,229. He also filed a cross complaint which was dismissed by the court and is not the subject matter of this appeal.

At the trial the appellants introduced evidence to show that on September 19, 1906, they wen to the office of the notary, Monserrat, to execute a contract of partnership. On the same day as García Caloca expressed his intention and desire of going to Spain an agreement was made by which Lamas agreed to buy the interest that García Caloca had in the 100 acres sown by him. That the consideration of the sale was $5,000. That the payment of the same was made by paying $1,000 in cash; that $1,400 of the consideration was made by having a note discounted for $1,500 of which García Caloca received the proceeds owing Lamas the balance of $100; that the remaining $2,600 were paid by means of a transfer of obligations—that is to say, at the same time that García Caloca expressed his intention of going to Europe he also said that he desired to form a partnership with Mr. Antonio Rodas; that the latter owed the firm of Lamas & Méndez, of which Mr. Lamas was the managing partner, the sum of $2,600. The transfer was effected by the consent of all the parties, who all testified to that fact. The evidence of the existence of these two contracts, as well as the consideration passing between García Caloca and Lamas, is uncontradicted and the same thing is true of the transfer. The only evidence which contradicts the assertions of plaintiff's witnesses as to the order in which the contracts between Lamas and García Caloca were executed is the witness Capó to whom we shall refer later.

There is some conflict of testimony with respect to whether García Caloca continued to exercise acts of dominion after the

alleged sale was made. The witnesses for the appellants and the appellants themselves said that Lamas was in charge of the place; on the other hand some of the witnesses for the appellee and principally Gabriel Capó said that García Caloca continued to exercise acts of dominion. The witness Capó, however, confined himself principally to showing that García Caloca received 48 sacks of sugar and loaded it in four carts, and this sugar was delivered by Capó in his capacity of foreman of Roig; he insisted that the *colono* of the plantation was García Caloca and not Lamas and he fixed these acts of dominion as taking place on the 7th of April, presumably 1907, as he referred to the crop taking place after the sale. But when questioned whether he knew in whose interest García Caloca was there he said he did not know and he also said that on the 7th of April, while the cart drivers were loading, García Caloca asked the witness, after showing the latter the private contract of partnership, "Tell me, Mr. Capó, I believe that this cane is doing very poorly; so you think that without receiving the $4,000, to which this contract refers, I shall be obliged to comply with it?" That witness answered: "The contract says so and, in the second place, he who receives the benefits is also bound by the bad results." The witness also testified that in April or May, Mr. Lamas came to get a note of the canes that had been delivered by García Caloca and asked for a receipt, and the witness went to Manuel Roig who made out the receipt in the name of García Caloca and the witness returned to Lamas, and in turning over the receipt to him asked him if he was satisfied, and the witness said he was. In answer to this testimony of Capó, Lamas testified that he commissioned García Caloca to go there for him. The other witnesses of the defendant are less definite as to acts of dominion than the witness Capó.

But even if Juan García Caloca had been on the farm every day from the time of the execution of the sale, and has exercised every possible act of dominion over the cane and of direction of the employes, these facts in themselves would

not be enough to destroy the presumption of good faith which the law throws around every transaction. His presence there was entirely consistent with the authority given him by the purchaser to be there. The fact is that García Caloca went away in September and did not return till April or May. There is some reference in the testimony to the fact that García Caloca was insolvent but such fact was not proved. The testimony of Roig that he had not paid him was not sufficient proof of the insolvency.

In the case of *Carrero* v. *Calzada,* decided on the 2d of June, 1909, this court had occasion to pass on the question of fraud. It is not a matter that must be left to suspicion and vague inference. In the face of a notarial deed and the proof of the consideration the testimony of the defendants is too meager to establish fraud. The conversation that Capó had with García Caloca which the latter denies in the absence of Lamas is insufficient to prove as against Lamas that the contract of sale was superseded by the contract of partnership. *Res inter alios acto alteri nocere non debit.* García Caloca at the time was, according to Capó, consulting the latter in the interest of the former and was not acting for Lamas.

We furthermore question whether the attachment should not be set aside for the mere reason that an action had never been brought by Roig, as creditor of García Caloca, to have the sale made between Caloca and Lamas rescinded. Even on the theory that there was a partnership, then steps should have been taken to have the interest of García Caloca attached and not the goods of the partnership itself. But as we have decided that there is no fraud in this case we need not expressly decide that question.

Appellee also contends that at the time García Caloca made this sale the affairs of the conjugal society that existed between him and his wife, recently deceased, had never been settled. But we agree with the appellant that the defendant, Roig, not being an heir or otherwise interested in the liquidation, is not one of the persons who is entitled by the Civil Code

to take advantage of such defect if in fact such defect existed. Moreover, it was only in his cross complaint that the appellee raised this question, and, as we have said before, the cross complaint and the action thereon is not the subject matter of this appeal. For these reasons the judgment must be reversed, the attachment released and the case remanded with instructions to the trial court, if the attached property cannot be returned as attached, to take testimony with respect to the value of the property so attached and render a judgment in favor of the appellant for the amount of the property so valued, with interest thereon from the date of the filing of the complaint herein.

*Reversed.*

Chief Justice Hernández and Justices Figueras and MacLeary concurred.

Mr. Justice del Toro did not sit at the hearing of this case.